# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA** | ) | |
| | ) | **Criminal Action No.** |
| **v.** | ) | **20-10198-FDS** |
| | ) | |
| **ADRIANO CORTEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, C.J.**

Defendant Adriano Cortez is one of nine defendants named in the indictment in this case. He is charged with (1) conspiracy to possess 40 grams or more of fentanyl and cocaine with intent to distribute and conspiracy to distribute 40 grams or more of fentanyl and cocaine, in violation of 21 U.S.C. § 846, and (2) possession of 100 grams or more of heroin, 40 grams or more of fentanyl, and cocaine base and cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) and (vi), and (b)(1)(C).

Cortez has moved to dismiss the superseding indictment on the ground that the delays in returning the indictment and bringing his case to trial violated his right to a speedy trial under the Fifth and Sixth Amendments to the U.S. Constitution and the Speedy Trial Act, 18 U.S.C. § 3161(b), and are grounds for dismissal under Federal Rule of Criminal Procedure 48(b).

For the reasons stated below, the motion to dismiss will be denied.

## I.    Background

### A.    2015 and 2017 State Court Proceedings

On April 29, 2015, Adriano Cortez was indicted in Massachusetts state court for trafficking 100 grams or more of heroin, trafficking 36 grams or more of cocaine, distribution of

cocaine, destruction of property more than $250, and resisting arrest.  (Gov. Opp., Ex. A ("Motion to Revoke") at 40, 41, 43; Case No. 1582CR271).  As of May 2017, those charges remained pending, and he had been released on bail.  (Motion to Revoke at 4, 48-50; Case No. 1582CR271).

On May 31, 2017, Cortez was arrested again.  (Motion to Revoke at 19; Case No. 1707CR2064A).  On June 1, 2017, he was charged in Massachusetts state court in a new indictment with possession of a class D controlled substance with intent to distribute and distribution of a class D controlled substance.  (*Id.*).  He was released on bail in that case; however, on June 2, 2017, the court in his 2015 case imposed a GPS monitoring requirement and home confinement.  (Case No. 1707CR2064A; Motion to Revoke at 1, 6).[1]

### B.        Government's Investigation into the Alleged Conspiracy

The investigation leading to the current indictment also began in June 2017.  (Compl., Ex. 2 ("Campbell Aff.") ¶ 5).  The government alleges that in June 2017, a confidential informant told law enforcement that an individual known as "A," later determined to be Cortez, was distributing large quantities of fentanyl, cocaine, and other controlled substances.  (*Id.*). According to the government, between September and November 2017, undercover officers arranged purchases of controlled substances from Cortez.  (*Id.* ¶ 6).  The undercover officers allegedly contacted him to place the orders, and he provided them with meeting locations.  (*Id.*). They allege that they would then meet one of "[his] co-conspirators" at the meeting locations and purchase the controlled substances with cash that was eventually delivered to Cortez.  (*Id.*).

At some point in November 2017, Cortez cut off his GPS bracelet and became a fugitive.

---

[1] The 2017 case was ultimately dismissed.  (Tr. at 29; ECF 129 ("Def. Supp. Mot."), Ex. A ("Def. Aff.") ¶ 8).

(Gov. Opp., Ex. B, ("Tr.") at 15, 40, 52).  On November 21, 2017, a warrant for his arrest was
issued by the Massachusetts court in his 2015 case.  (Gov. Opp., Ex. C at 1).

After Cortez fled, the United States did not file criminal charges against him or his
codefendants for some period of time.  John Broderick, who was supervising the investigation of
the alleged conspiracy, testified as follows:

> At the time it was -- well, he had fled.  We had information that he was out of
> state.   There was a different investigation that was in the works that included
> some of the individuals in the first -- in this case.  So that kind of tracked
> alongside it.  And then there was a change in the U.S. Attorney's Office at one
> point in time, and so it kind of -- to be honest with you, it kind of sat there, and
> then we brought it back as part of another case.

(Tr. at 52-53).

Between November 2017 and June 2020, Cortez's whereabouts remained unknown.  (*Id.*
at 15).  At some point, a decision was made to proceed with the case in spite of his absence,
notwithstanding the fact that the government considered him to be the leader of the conspiracy.
(*Id.* at 7, 15, 25-26; Campbell Aff. ¶¶ 5, 6).  On June 16, 2020, a criminal complaint was filed in
this court charging Cortez and eight co-defendants with conspiracy to distribute controlled
substances and to possess controlled substances with intent to distribute, in violation of 21
U.S.C. § 846.  (Compl.).  The court issued warrants for their arrests.  (Arrest Warrants at 1-9).
By June 24, 2020, most of the co-defendants had been arrested, but Cortez's whereabouts
remained unknown.  (ECFs 5-36; Tr. at 15).

On July 13, 2020, Cortez was allegedly involved in a domestic dispute in Colorado and
the victim contacted the local police.  (Tr. at 16-17).  As a result, law enforcement was finally
able to locate him.  On July 15, 2020, he was arrested on the federal warrant.  (*United States v.
Cortez*, Case No. 20-mj-00091-NYW, ECF 11).

### C.   Pre-Trial Proceedings

On July 17, 2020, Cortez made an initial appearance in the District Court for the District of Colorado, and the court entered an order of commitment to the District of Massachusetts.  (*Id.*, ECF 3, 7).  On July 31, 2020, he was transported from Colorado to Massachusetts.  (ECF 73 ("Def. Mot.") at 1-2).

On August 5, 2020, Cortez made his initial appearance before Chief Magistrate Judge Kelley.  (ECF 44).  The government moved for pre-trial detention.  (*Id.*).  Magistrate Judge Kelley appointed attorney Jason Benzaken to represent him and set a status conference for August 19, 2020.  (*Id.*).

On August 19, 2020, the court granted a motion by attorney Benzaken to withdraw, and appointed attorney Mark Shea in his stead.  (ECF 46, 49).  The court also continued the detention hearing, presumably to afford attorney Shea time to familiarize himself with the case and prepare for the hearing.  (ECF 44, 52).  On September 14, 2020, the court held the detention hearing, and granted the government's motion to detain Cortez pending trial on the basis that conditions of release would not assure the safety of the community or assure his appearance throughout the proceedings.  (ECF 54).

On September 16, 2020, Cortez and eight co-defendants were indicted on charges of conspiracy to possess 40 grams or more of fentanyl and cocaine with intent to distribute and conspiracy to distribute 40 grams or more of fentanyl and cocaine in violation of 21 U.S.C. § 846.  (ECF 59 at 1).

On October 7, 2020, Cortez moved to dismiss the indictment.  (ECF 73; Def. Mot.).  That same day, the grand jury returned a superseding indictment, that, among other things, changed the dates the conspiracy allegedly began (from June 2017 to March 30, 2015), and changed the

quantities and types of controlled substances involved.  (*Compare* ECF 59 at 1-2, *with* ECF 73 at 1-3).  It also added a new count charging Cortez with possession of 100 grams or more of heroin, 40 grams or more of fentanyl, and cocaine base and cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) and (vi), and (b)(1)(C).  (ECF 73).[2]

On October 7, 2020, the court excluded the time from October 7 through November 9, 2020, the date of the next status conference, in the interest of justice pursuant to 18 U.S.C. § 3161(h)(7)(A).  (ECF 79 at 1).  In its order, the court noted that while Cortez had objected to the exclusion of time, his codefendants had not.  (*Id.* at 2).

On October 19, 2020, Cortez moved for a bill of particulars.  Attorney Shea also filed a motion to withdraw.  (ECF 83, 85).  On October 27, 2020, the court held a hearing and granted attorney Shea's motion and held a colloquy with defendant about representing himself.  (ECF 101).  On October 30, 2020, the court appointed attorney John Cunha as standby counsel.  (ECF 105).

On November 9, 2020, a status conference was held, and another status conference was scheduled for January 4, 2021.  (ECF 110).  That same day, the court denied Cortez's motion for a bill of particulars, and held an *ex parte* hearing with him and attorney Cunha.  (ECF 109, 111).  The court granted Cortez's request that attorney Cunha, who had been acting as standby counsel, represent him.  (ECF 111).  In addition, the court excluded the time from November 9, 2020, through January 4, 2021, in the interest of justice pursuant to 18 U.S.C. § 3161(h)(7)(A), with the assent of all parties except for Cortez.  (ECF 112 at 1-2).

At the next status conference on January 4, 2021, the court set a final status conference

---

[2] Count 2 in the superseding indictment is based on essentially the same factual allegations as the 2015 state-court indictment.  (Gov. Opp. at 5; Def. Supp. Mot., Ex. 1 ("Def. Aff.") ¶ 4).

for February 19, 2021, and excluded the time from January 4 through February 19, 2021, in the interest of justice, again with the assent of all parties except for Cortez.  (ECF 127 at 1-2).

On January 10, 2021, defendant filed a motion to dismiss the superseding indictment, along with a supporting affidavit.  (ECF 129; Def. Supp. Mot.).

### D.      Pre-Indictment Delay

The superseding indictment alleges that the conspiracy began "no later than on or about March 30, 2015, and continuing through on or about November 1, 2017," and that the acts underlying Count 2 occurred "on or about March 30, 2015."  (ECF 73 at 1-3).

In his affidavit, Cortez alleges that on March 30, 2015, the Weymouth Police Narcotics Unit and the South Shore Drug Task Force "targeted and brutally arrested" him. (ECF  129 ¶ 4). He also alleges that on May 31, 2017, members of a Boston Police unit "targeted, harassed, and unlawfully arrested" him.  (*Id.* ¶ 5).  According to Cortez, some of the law-enforcement officers who have targeted and harassed him in the past are directly involved in this prosecution.  (*Id.* ¶ 11).

Cortez alleges that a woman named Rubi Vasquez-Reyes witnessed the May 2017 incident and "can help establish [his] innocence," but that he no longer knows her whereabouts or is in contact with her.  (*Id.* ¶ 7).  He alleges that he has lost contact with other residents of his apartment building at 332 Geneva Avenue in Dorchester, who were also potential witnesses in this case.  (*Id.* ¶ 16).  He also states that he no longer has access to the cell phone he owned at the time of the allegations, and that the records of the cellphone would help him to "establish [his] innocence."  (*Id.* ¶ 17).[3]

---

[3] Defendant's text messages are referred to throughout the affidavit of Special Agent Daniel Campbell in support of the criminal complaint.  (*See, e.g.*, Campbell Aff., ¶¶ 10, 13).

Cortez further alleges that law enforcement was aware of the identities of the defendants in this case no later than January 2018.  (*Id.* ¶ 13).[4]  He contends that law enforcement failed to apply for and execute search warrants on his house, notwithstanding the fact that the indictment alleges that marked money was used in the undercover sales, which was then transferred to him. (*Id.* ¶¶ 15, 16).  He also contends that the drugs involved in Count 1 of the indictment, which were seized between September and November 2017, were submitted to the Massachusetts State Police Crime Lab on January 15, 2019, and not returned until May 14 and 15, 2019.  (*Id.* ¶ 16; Def. Supp. Mot., Ex. D, at 1-2, 4, 6-7, 8-12).  Broderick testified as to why the drugs were not sent for testing sooner:

> So as far as the state lab, if you submit the drugs without a -- I guess for lack of --
> for a defendant's name, they won't be tested. And then when you request them,
> you submit a target name to that piece of evidence, and then it's tested. And my
> feeling is that's what happened in this case. It sat -- I think the State prioritizes
> their testing, so they're not testing drugs that aren't needed for court in an
> immediate time frame. That's why -- I think that's what happened.

(Tr at 53-54).  He also testified that the department, "in effect, [] prioritized . . . by not ever sending it."  (*Id.*).

Cortez further alleges that the government "purposely declined to file the present indictment in a timely manner because [it] sought to include [him]" in a different RICO case, which ultimately it did not do; that the government "purposely and oppressively decided" to pursue the prosecution during the coronavirus pandemic; that it delayed the matter to "harm, harass and gain a tactical advantage over [him]"; and that it is part of a "pattern of harassment" he has experienced from law enforcement for years.  (Def. Aff. ¶¶ 19-22).

---

[4] The defense appears to draw his conclusion from Special Agent Campbell's Affidavit.  (*See* Def. Supp. Mot. at 5, n.3; Campbell Aff. ¶¶ 8, 12, 14, 16, 18, 20, 22, 24).

II.    **Analysis**

A.    **Speedy Trial Act**

The Speedy Trial Act provides that an information or indictment charging a defendant must be filed within 30 days of his arrest.  18 U.S.C. § 3161(b).  If no grand jury has been in session during the 30-day period, the period automatically extends an additional 30 days.  *Id.* The statute further requires that when a defendant has entered a plea of not guilty, a trial should commence within 70 days of the time the defendant appears before a judicial officer of the court in which charges against him are pending.  § 3161(c)(1).

Section 3161(h) provides for several exclusions to the calculations of those time periods. Among other things, the time between the filing of a pretrial motion and its disposition is generally excludable under § 3161(h)(1)(D).  Delay resulting from any proceeding related to the removal of a defendant from another district and from transportation of the defendant from another district is excludable under §§ 3161(h)(1)(E) and (F), except that if the time between the order of removal or transportation and defendant's arrival to the district is greater than ten days, the delay is presumed unreasonable.  *Id*. at §§ 3161(h)(1)(E) and (F).[5]  The government can rebut the presumption of unreasonableness for travel of more than ten days, but "ordinary institutionalized delay" is not an excuse.  *See United States v. Noones*, 913 F.2d 20, 25 (1st Cir. 1990) (quoting *United States v. Jervey*, 630 F. Supp. 695, 697 (S.D.N.Y. 1986)).  And the court may also exclude time pursuant to § 3161(h)(7)(A) when it finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

Defendant contends that the 30-day period was violated because the first indictment was

---

[5] Weekends and holidays are included in the calculation of the ten-day period.  *United States v. Tinklenberg*, 563 U.S. 647, 662 (2011).

issued on September 16, 2020, 63 days after his arrest, on July 15, 2020, and the superseding indictment was issued on October 7, 2020, 84 days after his arrest.  As an initial matter, the 30-day period for the filing of the indictment concerns the filing of the original indictment, not any superseding indictments.  *United States v. Widi*, 684 F.3d 216, 225 (1st Cir. 2012) ("While adding new facts or new counts can always raise issues of notice or delay in trial, these problems are dealt with by [] rules and precedents [other than § 3161(b)].").  Therefore, the issue is whether the original indictment was timely.

On June 29, 2020, the District Court suspended all regularly scheduled grand jury proceedings from June 29 to August 31, 2020, "in light of the public emergency arising out of the coronavirus epidemic, and in order to protect public health."  (Gov. Opp., Ex. D).  Defendant was arrested on July 15, 2020.  The initial 30-day period was automatically extended an additional 30 days pursuant to § 3161(b), because grand juries were not in session between July 15 and August 14, 2020.

Eighteen of those days were also excludable pursuant to §§ 3161(h)(1)(E) and (F) because of the delay resulting from proceedings to remove defendant from Colorado and his transportation to Massachusetts.  On July 17, 2020, defendant had his initial appearance in Colorado.  On July 31, he was transported from Colorado to Massachusetts.  On August 5, eighteen days after his initial appearance in Colorado, he had his initial appearance in Massachusetts.  A delay that exceeds ten days under § 3161(h)(1)(F) is presumed unreasonable. However, in light of the difficulties the COVID-19 pandemic has caused to prisoner transportation and to the operations of detention facilities, here the delay was reasonable, and it certainly was not due to "ordinary institutionalized delay."  *Noones*, 913 F.2d at 25 (quoting *Jervey,* 630 F. Supp. at 697).

Finally, the time period from August 5, when the government moved for pretrial detention of defendant, until September 14, 2020, when the court granted the motion, was excludable pursuant to § 3161(h)(1)(D).

In sum, all but two days between defendant's arrest on July 15, 2020, and his indictment on September 16, 2020, were excludable.  Therefore, the 30-day requirement under the statute was met.[6]

### B.     Sixth Amendment

Defendant also contends that the government's delay in indicting him violated his right to a speedy trial under the Sixth Amendment to the U.S. Constitution.[7]  The Sixth Amendment right to a speedy trial attaches when a defendant is "indicted, arrested or otherwise officially accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982); *Dillingham v. United States*, 423 U.S. 64, 65, n.* (1975).  To the extent that defendant complains of pre-indictment delay, those contentions will be addressed below in the discussion of defendant's rights under the Fifth Amendment.

In *Barker v. Wingo*, the Supreme Court acknowledged that the Sixth Amendment right to a speedy trial is "slippery" and "depends upon circumstances."  407 U.S. 514, 522 (1972). Because it is difficult to know "how long is too long," it developed a four-factor test to assist courts in making the determination.  *Id.* at 521, 530.  These factors are (1) the length of the delay, (2) the cause of the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay.  *Id.* at 530.

The first factor considers the "extent to which the delay stretches beyond the bare

---

[6] Defendant does not appear to contend that the 70-day period under 18 U.S.C. § 3161(c)(1) has been exceeded.

[7] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. Amend. VI.

minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).  Courts will not analyze the remaining factors if the delay is "appreciably less than one year." *Rashad v. Walsh*, 300 F.3d 27, 33 (1st Cir. 2002); *see Doggett*, 505 U.S. at 652 n.1.  Here, appreciably less than one year has passed since defendant was arrested on July 15, 2020.  Nonetheless, the Court will also briefly address the other factors.

The second factor is the cause of the delay.  *Barker*, 407 U.S. at 531.  Here, the delay is reasonable in light of the fact that the case involves an alleged drug conspiracy with nine codefendants.  *See, e.g., United States v. Casas*, 425 F.3d 23, 33-35 (1st Cir. 2016) (concluding that a 41-month delay was reasonable because the case had involved 60 codefendants and a complex drug conspiracy).  Moreover, the parties, counsel, and the court have to contend with the many difficulties that the COVID-19 pandemic created in the judicial system, not the least of which is conducting jury trials safely in multiple-defendant cases.

The third factor is whether the defendant asserted his right to a speedy trial.  *Barker*, 407 U.S. at 532.  Here, defendant asserted his right to a speedy trial on multiple occasions.  He has objected to all exclusions of time under the Speedy Trial Act, and moved to dismiss the original indictment on October 7, 2020, and the superseding indictment on January 10, 2020.[8]

The fourth and final factor is whether the defendant was prejudiced by the delay.  In making that assessment, the court looks to the considerations the Supreme Court identified in *United States v. Ewell*.  383 U.S. 116 (1966); *Barker*, 407 U.S. at 532, 532 n.33 (noting that the right to a speedy trial "prevent[s] oppressive pretrial incarceration . . . minimize[s] anxiety and

---

[8] The government contends that "[c]ourts look with some skepticism at assertions of speedy trial rights made by defendants who contribute to the delay. . . ." and notes that defendant has filed several motions that toll the speedy-trial clock and require time to be decided.  (Gov. Opp. at 19) (quoting *United States v. Carpenter*, 781 F.3d 599, 614 (1st Cir. 2015)).  However, the court in *Carpenter's* skepticism was directed not towards the motion practice of defendants, but rather towards defendants who did not timely assert their speedy trial rights until filing a motion to dismiss.  *Carpenter*, 781 F.3d at 614.  This is not such a case.

concern of the accused . . . [and] limits the possibility that the defense will be impaired"). However, while defendant indicates that he has experienced "lengthy pre-trial incarceration, anxiety, [and] family hardships," he does not appear to assert that it has actually impaired his ability to mount a defense.  In addition, the First Circuit has held that "[w]hile this type of prejudice is not to be brushed off lightly, considerable anxiety normally attends the initiation and pendency of criminal charges[.]  [H]ence[,] only undue pressures are considered."  *See Casas*, 425 F.3d at 34 (quoting *United States v. Henson*, 945 F.2d 430, 438 (1st Cir. 1991)).  Defendant here has not shown that his incarceration since his arrest has resulted in more anxiety than that experienced by other defendants in his position.  And while he speaks of "loss of memory due to the passage of time," he appears to be referring to pre-indictment delay, which is not relevant to the analysis of his speedy-trial right under the Sixth Amendment.  *MacDonald*, 456 U.S. at 6.

Accordingly, and after considering the *Barker* factors, the Court finds that defendant's right to a speedy trial under the Sixth Amendment has not been violated.

### C.    Federal Rule of Criminal Procedure 48

Defendant also seeks dismissal under Fed. R. Crim. P. 48(b).[9]  Pursuant to Rule 48(b), the court may dismiss an indictment if an unnecessary delay occurs in "(1) presenting a charge to the grand jury; (2) filing an information against a defendant; (3) or bringing a defendant to trial." Fed. R. Crim. P. 48(b).  The standard for dismissal under Rule 48(b) is more exacting than the standard under the Sixth Amendment, and permits dismissal even if there has been no constitutional violation.  *See United States v. Cartano*, 420 F.2d 362, 363 (1st Cir. 1970); *Mathies v. United States*, 374 F.2d 312, 314-15 (D.C. Cir. 1967).  The defendant must show that

---

[9] In his discussion of Rule 48(b), defendant again focused on pre-indictment delay.  Those contentions are considered in the discussion of his rights under the Fifth Amendment below, because Rule 48(b) is "limited to post-arrest situations."  *United States v. Marion*, 404 U.S. 307, 319 (1971); *United States v. Guyon*, 1994 WL 718954, at *2 (1st Cir. 1994).

there was an unnecessary delay, and that it either prejudiced him or was improperly motivated. *Fleming v. United* States, 378 F.2d 502, 504 (1st Cir. 1967).

The seven-month delay to date in bringing this case to trial has been entirely reasonable in light of the complexity of the charge, the number of defendants, and the serious difficulties posed by the COVID-19 pandemic, including the difficulty, indeed impossibility, of conducting multiple-defendant trials safely. Furthermore, defendant has not shown any particularized prejudice he has suffered due to the delay.

This case was also presented to the grand jury in a timely manner. *See* Fed. R. Crim. P. 48(b)(1). The case was presented on September 16, 2020, only 16 days after grand jury proceedings in the District Court resumed. Defendant contends that the lack of substantial differences between the government's original indictment and the superseding indictment suggests that the government was negligent in failing to issue the superseding indictment promptly, by which he presumably means that the government could have included the new allegations in the original indictment. (Def. Supp. Mot. at 7). But those differences do not appear to be insubstantial; for example, the starting point of the conspiracy is now alleged to be March 2015 rather than June 2017, and the quantities and types of controlled substances involved have changed. Moreover, and in any event, the superseding indictment returned only 21 days after the original indictment, or 37 days after grand jury proceedings resumed, and within the statutory limits of § 3161(b). Dismissal is therefore unwarranted under Rule 48(b)(1).

## D.   **Fifth Amendment**

Most of defendant's contentions focus on the pre-indictment delay in this case. Pre-indictment delay may violate a defendant's right to due process under the Fifth Amendment to the U.S. Constitution when such a delay "caused substantial prejudice to [defendant's] right[] to a fair trial and . . . the delay was an intentional device to gain tactical advantage over the accused."

*United States v. Marion*, 404 U.S. 307, 324 (1971); *United States v. Picciandra*, 788 F.2d 39, 42 (1st Cir. 1986).  The delay must therefore be both prejudicial and the result of the government's bad faith efforts to delay indictment.  *See id.*; *United States v. DeCologero*, 530 F.3d 36, 78 (1st Cir. 2008).  However, "[t]he Due Process Clause has only a limited role in this context because the statutes of limitations provide the primary protection against undue pre-indictment delays."  *Id.* at 78 (citing *Marion*, 404 U.S. at 324).

"With respect to prejudice, a defendant must do more than allege that witnesses' memories had faded or that evidence had been lost that might have been helpful to him."  *United States v. Muñoz–Franco*, 487 F.3d 25, 58 (1st Cir. 2007); *see also United States v. Marler*, 756 F.2d 206, 214 (1st Cir. 1985) ("Generally, the assertion that memories have dimmed with the passage of time cannot establish actual substantial prejudice.").  With respect to bad faith,

> [p]re-indictment delay for the purpose of investigation, for the purpose of discovering all participants in a conspiracy so they can be tried together, and for the purpose of letting state authorities pursue their own prosecution, is permissible.  Delay in order to deprive the defendant of witnesses or impose the burden of defending oneself in back-to-back trials, may not be.

*United States v. Irizarry-Colon*, 848 F.3d 61, 70-71 (1st Cir. 2017) (internal citation omitted).

Here, defendant contends that the pre-indictment delay of 34 months violated his due-process rights.  (Def. Supp. Mot. at 5.)  Specifically, he contends that the government knew the identities of all of his codefendants by January 2018, yet did not file the superseding indictment until October 7, 2020; in the meantime, he says he lost track of exculpatory witnesses and physical evidence was not preserved.

The main problem, of course, with defendant's contention is that it fails to acknowledge the very substantial role that his own actions played in the delay.  Defendant became a fugitive from justice in November 2017.  According to Broderick, the government did not file a criminal

14

complaint in November 2017 because defendant was a fugitive; because they had information that he had left Massachusetts; and because there was another investigation involving some of his codefendants that was ongoing.  It is hardly surprising that the government would not prioritize an investigation of a fugitive when there was no assurance that he would ever be located.  Put simply, if defendant had not cut off his monitoring device and fled Massachusetts in November 2017, there is a strong chance that he would have been indicted sooner.  At some point, a decision was made to proceed with the case despite his absence.  But it is not unreasonable under the circumstances that the government delayed its investigation for some period of time.

Defendant further contends that the government purposely decided to pursue the prosecution during the coronavirus pandemic, and that they delayed the matter to harass and gain a tactical advantage over him.  He has put forth no evidence to support that allegation.  Indeed, the government appears to have been able to locate and arrest defendant only because he was arrested on another matter.

Defendant has also failed to show any particularized prejudice from the pre-indictment delay.  He contends that if he had been indicted sooner, residents of his apartment building could have helped him establish his innocence, and that his text messages could have exonerated him. But he has not pointed to specific testimony that those witnesses could have provided that would have exculpated him, nor explained why those text messages are critical to his defense.  In short, he has argued only that "memories [] faded" and "evidence ha[s] been lost," which is not normally sufficient to prove that his Fifth Amendment rights were violated. *Muñoz–Franco*, 487 F.3d at 58.

Defendant's contentions about the bad faith of law enforcement are also lacking in

evidentiary support.  He contends that law enforcement harassed him in connection with his state criminal proceedings, but does not describe any particular ways in which they did so or (more importantly) how such proof would benefit his defense.  In addition, while he claims that some of the law-enforcement officials involved in his prior proceedings are involved in this proceeding, that alone does not show harassment—nor is it particularly surprising, considering that the allegations from his 2015 case form the basis of Count 2.

Finally, he contends that the delay in testing the drug evidence was purposeful and is evidence of bad faith.  It is true that the delay was relatively long—the drugs were collected between September and November 2017, but not submitted to the Massachusetts State Police Crime Lab until January 15, 2019, and returned on May 14 and 15, 2019.  The testing appears to have been delayed not because it would give the government some tactical advantage over defendant, but rather, simply because the case was stalled—and the case was stalled in very large part because defendant was a fugitive.  Specifically, Broderick testified that "the State prioritizes their testing, so they're not testing drugs that aren't needed for court in an immediate time frame."  (Tr. at 53-54).  More importantly, there is no evidence that because of the delay the drug testing was somehow inaccurate or otherwise tainted.

In summary, defendant has not shown how the witnesses and physical evidence that he contends disappeared due to the pre-indictment delay prejudiced him, nor has he demonstrated that the government acted in bad faith.  Accordingly, the Court finds that the pre-indictment delay did not violate his right to due process under the Fifth Amendment.

## III.  Conclusion

For the foregoing reasons, defendant's motion to dismiss is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  February 12, 2021                    Chief Judge, United States District Court