UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 1:20-cr-10198-FDS |
| ADRIANO CORTEZ, a/k/a, "A," ) | |
| ) | |
| Defendant ) | |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT COCONSPIRATOR STATEMENTS PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)**

The United States of America, by and Nathaniel R. Mendell, United States Attorney, and Sarah Hoefle and John Mulcahy, Assistant United States Attorneys for the District of Massachusetts, respectfully requests that this Court allow the Government to present evidence consisting of recordings of conversations between undercover officers ("UC-1" and "UC-2") (collectively, the "UCs") and defendant Adriano Cortez's ("Cortez" or "defendant") co-defendants Fabrice Teixeira, a/k/a "Joshua Cortez" a/k/a "Fabrice Cortez Teixeira," Armando Gomes, a/k/a "G," Patrick Dunn, Daniel Barbosa, a/k/a "D," Carlos Monteiro, Tre Fernandes, a/k/a "Oz" a/k/a "OC," Sandro Pereira Cabral, and John Rodrigues, a/k/a "Joao Fernandes Rodrigues" (collectively, the "co-defendants" or "coconspirators").  Co-defendants' statements are admissible as statements of coconspirators pursuant to Federal Rule of Evidence 801(d)(2)(E).  To the extent the Court has any reservation about the admissibility of the statements offered under Rule 801(d)(2)(E), the government requests that the Court provisionally admit the statements at trial and make the necessary finding of admissibility at the close of evidence, in accordance with *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

## BACKGROUND

As relevant to Count One of the Superseding Indictment in this case, on numerous occasions between September and November 2017, two undercover officers purchased controlled substances from an individual known to them as "A," whose identity investigation and subsequent events revealed to be Cortez. Specifically, one of the UCs would contact Cortez and place orders for fentanyl, cocaine or both, and Cortez would provide the UC with a meeting location. After arriving at the meeting location, the UC would be met by one of Cortez's coconspirators, who would provide the UC with the controlled substance(s) they had ordered in exchange for money.

During the controlled buys recorded by the UCs, the UCs and the coconspirators often discussed various aspects of the conspiracy, including "A" and drug type and price.[1] Examples of such statements are contained in draft excerpts below:

- September 12, 2017 recording: "A" instructs UC-1 to "walk down Thelma and my people gonna pick you up and drop you off around the corner." Later, UC-1 enters Teixeira's car. Towards the end of the transaction, UC-1 asks Teixeira: "you want me to call you in the future or what? Or just deal with A?" Teixeira responds: "nah, you can call him."

- September 14, 2017 recordings:[2] UC-1 tells "A" where he is parked and the type of car he is in. Several minutes later, Gomes enters UC-1's car. UC-1 explains "I know 'A' was rushing me, but I – fucking traffic was brutal." Gomes responds "Yeah I know. For real." UC-1 adds "He wanted me to go to Quincy. I was stuck in it. I was stuck

---

[1] These recordings also capture phone conversations between the UCs and "A," whose voice can be heard on speakerphone.

[2] This controlled buy is captured by two recording clips.

with that for so long. You know?" Gomes responds: "I bet . . ." and notes "when I get a car, I can come to you."

- September 22, 2017 recordings:[3] "A" directs UC-2 to a meeting location and confirms the description of the car UC-2 is in. "A" later asks "you got 600, right bro?" and UC-2 responds "Yeah, I got cash." Later, "A" instructs UC-2 to "park, shut your lights off and shut your car off." Gomes later enters UC-2's car; UC-2 says "appreciate you;" Gomes says "Yeah . . . how much is it? 6?" and adds "so just um let me know if you like it or not, for anybody else . . . I even fuck around with the blow sometimes."

- September 26, 2017 recordings:[4] "A" confirms the description of the car UC-2 is in. Dunn later enters UC-2's car. UC-2 asks: "you A's boy?" to which Dunn responds "yeah, you got it."

- October 12, 2017 recordings:[5] "A" and UC-2 discuss UC-2's location and the description of UC-2's. "A" states: "my peoples is on Thelma, they don't see you." UC-2 provides several landmarks indicating his location, which "A" can be heard conveying aloud apparently to another person. After some discussion, UC-2 notes: "there's a black car driving by me now . . . is this them? Yea . . . all set bro, peace." Barbosa enters UC-2's car, and UC-2 states "sorry about the confusion bro." A sound of what appears to be money being counted can be heard while Barbosa states "One two three . . ." UC-2 thanks Barbosa.

---

[3] This controlled buy is captured by three recording clips.

[4] This controlled buy is captured by two recording clips.

[5] This controlled buy is captured by three recording clips.

3

- October 20, 2017 recording: "A" and UC-1 discuss UC-1's location. Fernandes enters UC-1's car and provides a package containing a white substance. UC-1 asks about getting "the white later?" Fernandes responds: "I don't know, I haven't talked to him, he just told me to bring this to you." UC-1 then hands Fernandes a wallet holder and explains "give that . . . 'A' knows I was in Mexico . . . know who that is? . . . make "A" Google him . . . he's the saint of drug dealer . . . drugs." Fernandes says it is "dope" and then appears to count money. He tells UC-1 he will not steal it, noting that it's "my cousin . . . I would never do that to my brother."

- October 25, 2017 recording: After UC-1 confirms to "A" that he is at the meeting location, Pereira enters UC-1's car and asks UC-1 to drive him around the corner. As UC-1 pulls over to let Pereira out, other male approaches close to the passenger window of UC-1's car. UC-1 states that another deal was just made. Pereira gets back into the car and apologizes for the male walking up to UC-1's car.

- November 1, 2017 recordings:[6] Rodrigues enters the UCs' car. UC-1 asks if he is "A" and Rodrigues says he is not. UC-1 explains he had just got off the phone with him ["A"] and that he thought "A" was coming. After the UCs provide Rodrigues cash, Rodrigues expresses confusion over what is supposed to occur and states "he told me to come grab bread . . . this is the wrong amount of money." Rodrigues exits and says he is "gonna call him right now." After several minutes, Rodrigues reenters the UCs' car while speaking to someone on the phone. When Rodrigues hangs up, he tells the UCs "I'm sorry that was just weird . . . you asked me if I was A . . . I thought you was

---

[6] This controlled buy is captured on three recording clips

the boys . . ." UC-1 explains that he thought "A" was meeting him because "he always tells me my people are gonna be there . . . then he goes . . . 'I'll be there in 5 minutes." The UCs note that they would rather Rodrigues be cautious. Rodrigues says: "I don't wanna be caught up with no dumb shit," but that "y'all are good, he said y'all are good people."

## ARGUMENT

Rule 801(d)(2)(E) provides that statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Such statements are admissible at trial for the truth of the matter asserted if the proponent establishes, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the defendant was a member of the conspiracy, (3) the declarants were also members of the conspiracy, and (4) the declarants' statements were made in furtherance of the conspiracy. *United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012). "How this works is that a judge conditionally admits the alleged coconspirator statements, 'subject to a later finding by the [judge], supported by extrinsic evidence (other than the statements themselves),' sufficient to show the conspiracy and the speaker's involvement in it." *United States v. George*, 761 F.3d 42, 54-55 (1st Cir. 2014) (quoting *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 30 n.2 (1st Cir. 2014)). A district court's finding of admissibility under Rule 801(d)(2)(E) is known in this circuit as a *Petrozziello* ruling. *United States v. Ciresi*, 697 F.3d 19, 25 (1st Cir. 2012).

In determining the admissibility of co-conspirator statements, the Court may consider any relevant information, including the statements being offered for admission. *Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *United States v. Rivera-Santiago*, 872 F.2d 1073, 1092-93 (1st Cir. 1989). Co-conspirator statements alone cannot establish the existence of a conspiracy

embracing both the declarant and the defendant; some extrinsic proof of the conspiracy's existence is required. *United States v. Capleton*, 350 F.3d 231, 241 (1st Cir. 2003). Additionally, to be admissible, co-conspirator statements must have been made "during" and "in furtherance of" a conspiracy. To be deemed "in furtherance," a statement "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the goals of the conspiracy in some way." *United States v. Martinez-Medina*, 279 F.3d 105, 117 (1st Cir. 2002). *See also United States v. Rodriguez*, 525 F.3d 85, 101 (1st Cir. 2008) ("A statement is in furtherance of the conspiracy if it tends to advance the objects of the conspiracy as opposed to thwarting its purpose").

All of the co-defendants' recorded statements are admissible under Rule 801(d)(2)(E) because the record establishes by a preponderance of the evidence that: (1) the drug conspiracy existed; (2) Cortez was a member of the conspiracy; (3) each of the co-defendants (the speakers of the offered statements) was also a member of the conspiracy; and (4) the offered statements were made during and in furtherance of the conspiracy.

The Court should consider the coconspirator statements themselves, including those noted above, in determining whether a conspiracy existed. *Bourjaily*, 483 U.S. at 181 (1987). The Court should also consider: (1) Cortez's statements themselves establishing that he was using runners to facilitate drug transactions (i.e. he had come to an illegal agreement with other persons); (2) testimony by the officers that they arranged the deals with one person who was actually orchestrating the deals, i.e. the defendant, while they met with several other individuals to actually obtain the drugs; (3) testimony by officers that surveillance showed runners coming and/or going to/from the defendant's residence; and (4) testimony by a cooperating witness that the defendant directed him to do a drug deal; among other evidence. This all shows by a preponderance of the

evidence that a conspiracy existed and the coconspirators' statements are admissible under Rule 801(d)(2)(E).

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that the Court rule that statements made by the defendant's coconspirators are admissible as substantive evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). To the extent the Court has any continued reservation about the admissibility of the statements offered, the government requests that the Court provisionally admit the statements at trial and make the *Petrozziello* ruling at the close of evidence.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/ *Sarah B. Hoefle*
Sarah B. Hoefle
John T. Mulcahy
Assistant United States Attorneys

Date: October 21, 2021

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Sarah B. Hoefle*
Sarah B. Hoefle
Assistant U.S. Attorney

Date: October 21, 2021